Hillsborough, }
Sept. 21, 1934. }

FLORENCE HOWE (*by her father and next friend*)

*v.*

AMOSKEAG MANUFACTURING COMPANY.

HENRY R. HOWE *v.* SAME.

*John J. Sheehan* and *Doyle & Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiffs.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wyman* orally), for the defendant.

MARBLE, J. The plaintiff was twelve years old at the time she received her injury. The evidence tended to prove that she was

struck, while standing by the side of the highway opposite her home, by a motor truck owned by the defendant and driven by one of the defendant's employees.

For some distance on either side of the point where the accident occurred the highway was practically straight. It was constructed of cement twenty feet in width, and ran approximately north and south. The plaintiff's home was on the westerly side of the highway. Shortly before the accident she left the house with her parents to get water from a well situated in a field about 125 feet east of the highway. The path leading to this well extended from the east side of the road through a gateway with bars built into a gap in the stonewall running parallel to the road and 15 feet easterly therefrom.

Returning from the well, the plaintiff stopped at the gateway to put up the bars while her mother went on across the road toward the house. Her father had already reached the house. It was after six o'clock on the twenty-ninth of November and dark enough so that she carried a flashlight. Her testimony relating to the accident follows.

"Q. Now, when you got to the bars, did you do anything? A. I put the bars up. Q. And what did you do with your flashlight at that time? A. I had my flashlight in my hand. Q. Now, did you see some automobiles or automobile trucks on the road that night? A. I did. Q. And where were you when you first saw them, Florence? A. I was at the gate. Q. And where were they, if you remember? A. They was coming down the hill. ... Q. And what did you do then? A. I walked up to the road and stood. Q. Now, did you notice how many trucks there were? A. I did. Q. How many were there? A. There was two trucks. Q. Now, as you stood by the road, were you on the road or off? A. I was standing on the shoulder of the road. Q. And as you stood there what happened to the first truck? A. The first truck went by all right. Q. Now how about the second truck? A. The second truck swung out and hit me. ... Q. Now, after that first truck went by, did you move, Florence? A. I didn't have time."

The plaintiff indicated that she was standing about 18 inches from the edge of the cement. The hill referred to was some distance south of that point. The trucks were returning empty to Manchester from Lowell, Massachusetts. They are thus described in the defendant's brief: "They were two and one-half ton Macks, identical in design . . . and equipped with Presto acetylene gas lights. . . . Their width from front fender to front fender was six feet, four inches. ... The body width, extending 15 feet back of the cab, . . . was eight feet without variation. ... When unloaded the platforms were 41 to

41½ inches from the ground in front, increasing to 44 inches in the rear. Except for the wooden slats . . . extending up from the platform, the truck bodies were of steel . . . with square steel projecting edges on both corners behind the cab."

At the time of the accident the trucks were only 25 or 30 feet apart and were running at a speed of 25 or 30 miles an hour. A motorist who was driving behind the rear truck describes the accident as follows: "Well, knowing the road I decided I wouldn't try to go by until I got by the corner in the turn there at the grade. . . . I glanced over to the house where these people lived, because I have known them before, and as I drew my eyes back to the road I saw the girl, as I took it, fly away from the rear end of the truck . . . the second truck in line . . . she was thrown to the east . . . . I drew sharply to the left to keep from running over the child . . . . I partially stopped, and then I decided I had better get the truck number, so I went along, and got the number of the truck."

The plaintiff's father saw the accident from the front of his house. "Q. After you noticed Florence at the gate, what did she do? A. Put up the bars. Q. And then? A. And went up to the road, in the shoulder of the road. Q. Did the trucks go by? A. Yes, sir. Q. Anything happen when the first truck went by? A. No, sir. Q. What did you notice as the second one went by? A. My girl laid on the concrete road, with her feet on the concrete and her shoulders on the shoulder of the road. Q. Did you see the contact? A. No, sir. Q. Did you notice her after the first truck went by? A. Yes, sir; she was standing on the shoulder of the road. Q. Had she moved any? A. Not that I see."

The plaintiff was found face downward on the cement. Her nose was swollen and discolored and there was a contusion six inches long back of her left ear. Her feet and legs were on the cement but the rest of her body lay on the east shoulder of the road beyond the cement.

On these facts the defendant argues that the plaintiff's statement that she did not move from the side of the road and that the rear truck "swung out" and hit her cannot in the nature of things be true; that if she was struck "by the square . . . projection on the overhang" behind the cab, "considering the weight and speed of the truck, injury to the shoulders or other part of the body and laceration of the skin would seem inevitable," that it would be "impossible for the back side of the head to be in contact with the upright bars of the truck" unless she moved, and that if she "was struck while standing

motionless off the road her body must have gone in a direction opposite to that of the force."

The plaintiff was only fourteen years of age at the time of the trial. She was testifying to objective matters about which she might be mistaken (*Harlow* v. *Leclair*, 82 N. H. 506, 512) and was not bound by every assertion made. *Watkins* v. *Railroad*, 83 N. H. 10, 13. The driver of the first truck testified that he was driving "near the center of the right hand side of the cement." Since his truck passed the plaintiff in safety and the other did not, it is a reasonable inference that the wheels of the rear truck were closer to the easterly edge of the cement. In the darkness this may well have created the illusion in the plaintiff's mind that the second truck "swung" toward her. (There is no other evidence that it did so swing.) The body of the truck back of the cab was eight feet wide. The distance "from the outside of the front fender on the left to the outside of the front fender on the right" was six feet, four inches. The right-hand lane of cement was only ten feet in width. It is thus apparent that if the wheels of the truck were close to the edge of the cement, there would be an appreciable part of the truck's body overhanging the shoulder of the road.

The plaintiff was 53 inches high. In the defendant's brief it is assumed that her normal standing position would bring her head at least 48 inches above the ground. It does not appear whether the shoulder of the road was or was not flush with the surface of the cement. The height of the truck platform varied from 41 inches to 44 inches. The plaintiff's mother had crossed the highway diagonally in a northwesterly direction toward the house. The plaintiff was following her. If, as would have been natural, her head was turned slightly in the direction of the house it is not improbable that the projecting edge of the truck body struck her precisely where the contusion appeared.

The injury was not a severe one, and the presiding justice felt impelled to set the verdicts aside unless remittiturs were filed. But this does not mean that the injury was not inflicted by the motor truck. Motions to set aside the verdicts as against the law and the evidence have been denied. The fact that the plaintiff after the trucks had passed lay partly on the cement does not effectually disprove her account of the accident. It could be found that she was standing a sufficient distance from the cement to all but escape contact with any projection on the side of the truck. Apparently the blow was a glancing one. It may have whirled her about or caused

her to stagger, and "No accurate law of physics can be invoked to determine just how a body ought to fall or will fall when struck under such circumstances." *Hoyt* v. *Railway*, 76 N. Y. Supp. 832, 834, affirmed without opinion in 175 N. Y. 502.

The witness who said, "I saw the girl, as I took it, fly away from the rear end of the truck," was traveling 50 feet back of the truck. Later he explained the statement by declaring that he "didn't say she came around the end of the truck," and that all he saw "was the girl go away from the truck" and "fall into the road." His testimony is not necessarily inconsistent with that of the plaintiff nor, even if found to be inconsistent, is it controlling. In these circumstances the defendant's contention that "the overwhelming weight of the evidence leads to no other conclusion but that the accident happened in some manner not attributable to the defendant's drivers" cannot be sustained.

The driver of the rear truck was following the forward truck very closely. Not only was his view of the road somewhat obstructed, but his gaze was naturally directed to the truck ahead. Under such conditions it could be found that the running of the truck so near the edge of the cement where the overhang of the body might endanger persons walking or standing on the shoulder of the road constituted a negligent act.

The plaintiff took some care for her own safety. She saw the trucks coming and waited outside the cement lane for them to pass. Knowledge that some trucks were wider than others and that she ought not to stand too close to the traveled part of the road did not preclude recovery as a matter of law. *Burns* v. *Coté*, 86 N. H. 167, 168. Her age was a circumstance to be considered on the issue of contributory fault. *Charbonneau* v. *MacRury*, 84 N. H. 501, 507, 508, and cases cited; *George* v. *Company*, 86 N. H. 121, 122. Clearly that issue was for the jury. *Clark* v. *Temple*, 86 N. H. 170, 171; *Carr* v. *Orrill*, 86 N. H. 226, 227.

*Exceptions overruled.*

BRANCH, J., was absent: the others concurred.

## MEMORANDUM.

MR. CHIEF JUSTICE PEASLEE, having attained the age of seventy years on the 23rd day of September, 1934, retired under the constitutional limitation.